UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM M. DAVIS,

          Plaintiff,

    v.

COUNTY OF ALAMEDA, et al.,

          Defendants.

Case No.  12-cv-03768-JST (PR)

**ORDER GRANTING DEFENDANT PETE SWANSON'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 17

Plaintiff filed the instant pro se civil rights action under 42 U.S.C. § 1983 alleging violation of his constitutional rights while incarcerated at the Alameda County Jail.  Specifically, plaintiff alleges that defendant United States Marshal P. Swanson ("Swanson"), while transporting plaintiff and other inmates to the Alameda County Jail, removed the handcuffs of a known gang member who then hit plaintiff in the back of the head, causing a concussion.  Plaintiff also alleges that he did not receive adequate medical care at the jail for his concussion symptoms and for other medical issues.  The Court screened the complaint pursuant to 28 U.S.C. § 1915A and found plaintiff had stated a cognizable claim for deliberate indifference to his safety in violation of the Eighth Amendment against Swanson.  The Court also found plaintiff had stated a cognizable claim for deliberate indifference to his medical needs, also in violation of the Eighth Amendment, against defendant doctors McCoy, Orr, and Pompey.

Now before the Court is defendant Swanson's motion to dismiss or, in the alternative, for summary judgment.  Plaintiff did not file any opposition to the motion and the deadline by which

United States District Court
Northern District of California

1  to do so has passed.[1]  For the reasons discussed below, the Court GRANTS the motion.

2  Defendant Harold Orr's motion for summary judgment will be addressed in a separate order.

3  **FACTUAL BACKGROUND**

4       The following facts are undisputed unless otherwise indicated.

5       On July 6, 2011, Swanson and his partner were transporting plaintiff and eleven other

6  inmates from federal court back to county jail.  (Swanson Decl. ¶ 2.)  Nine of the inmates were to

7  be dropped off at the Alameda County Jail's Glenn E. Dyer Detention Facility ("GEDDF").  (Id.)

8  All twelve prisoners were handcuffed.  (Id.)  Two of the twelve prisoners were wearing jumpsuits

9  with red and white stripes, indicating they were classified as administrative segregation inmates.

10  (Id. ¶ 4.)  Prisoner John Valle ("Valle") was one of the prisoners in a red and white jumpsuit.  (Id.)

11  Plaintiff was wearing a yellow jumpsuit, which indicated that he had been classified as a general

12  population inmate.  (Id. ¶ 6.)

13       Swanson and his partner arrived at the secure sallyport at GEDDF at approximately 6:30

14  p.m.  (Id. ¶ 7.)  Several Alameda County Sheriff's Office ("ACSO") deputies were in the sallyport

15  area.  (Id. ¶ 8.)  Swanson's partner lined up eight of the prisoners, including plaintiff and Valle,

16  and removed their restraints.  (Id. ¶ 7.)  Swanson was primarily focused on a prisoner being

17  transferred from the Federal Detention Center ("FDC") in Dublin, California.  (Id. ¶ 7.)  After he

18  put the FDC Dublin prisoner on a bench, Swanson began assisting his partner with removing the

19  restraints of the prisoners who were lined up.  (Id. ¶ 7.)  Removal of the federal restraints was

20  necessary because federal restraints are different from the restraints used by non-federal law

21  enforcement, and non-federal law enforcement officials lack the proper keys to open federal

22  restraints.  (Id. ¶ 15.)

23       Suddenly, and without any warning, prisoner Valle used his right fist to strike plaintiff on

24  the back of the head.  (Id. ¶ 9.)  Swanson was unable to stop the punch because he was too far

25  from the location of the punch, and the punch was too fast.  However, Swanson and an ASCO

---

27  [1] Defendants have notified the Court that plaintiff has been transferred to the Allenwood Medium
28  Federal Correctional Institution in White Deer, PA.  (Dkt. Nos. 30-34.)  They have served plaintiff
at his new address.  (See id.)  Plaintiff is reminded that he must keep the Court and all parties
informed of any change of address.

1  deputy immediately restrained Valle, pulling him away from plaintiff, taking him to the ground,

2  and handcuffing him.  (Id.)

3          After plaintiff was struck, he staggered and fell forward, but he did not fall to the ground or

4  lose consciousness.  (Id. ¶ 10.)  When Swanson spoke to plaintiff after the incident, plaintiff

5  denied that he was injured.  (Id.)  He refused medical attention and did not have any apparent

6  injuries or complain of any pain.  (Compl. Ex. B at 5.)  He was later given an ice pack for a stiff

7  neck, prior to being medically cleared for continued incarceration.  (Id.)  He did not want to give a

8  formal written statement or pursue a criminal complaint against Valle.  (Id.)  Plaintiff alleges that

9  he saw Medical Director Dr. Harold Orr on August 5, 2011 and that Dr. Orr advised plaintiff that

10  he had suffered a concussion.  (Compl. at 4.)

**DISCUSSION**

11

12  **I.     Standard of Review**

13          Summary judgment is proper where the pleadings, discovery, and affidavits show there is

14  "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

15  law."  See Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.

16  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

17  genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

18  party.  See id.

19          A court shall grant summary judgment "against a party who fails to make a showing

20  sufficient to establish the existence of an element essential to that party's case, and on which that

21  party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an

22  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

23  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial

24  burden of identifying those portions of the record that demonstrate the absence of a genuine issue

25  of material fact.  Id.  The burden then shifts to the nonmoving party to "go beyond the pleadings

26  and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

27  file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See id. at 324 (citing

28  Fed. R. Civ. P. 56(e) (amended 2010)).

1    For purposes of summary judgment, the court must view the evidence in the light most

2    favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

3    evidence produced by the nonmoving party, the court must assume the truth of the evidence

4    submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir.

5    1999).  The court's function on a summary judgment motion is not to make credibility

6    determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W.

7    Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

8    A verified complaint may be used as an opposing affidavit under Rule 56, provided it is

9    based on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder

10   v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint

11   as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746,

12   plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not

13   based purely on information and belief but rather on personal knowledge).  Here, plaintiff's

14   verified complaint is considered in opposition to the motion for summary judgment.

15   **II.     Analysis**

16   **A.      Standard for Eighth Amendment Safety Claims**

17   The Eighth Amendment requires prison officials to take reasonable measures to guarantee

18   the safety of prisoners.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In particular, prison

19   officials have an affirmative duty to protect inmates from violence at the hands of other inmates.

20   See id. at 833.  The failure of a prison official to protect inmates from attacks by other inmates or

21   from dangerous conditions at the prison violates the Eighth Amendment only when two

22   requirements are met: (1) the objective component – the deprivation alleged must be sufficiently

23   serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)); and (2)

24   the subjective component – the prison official must possess a sufficiently culpable state of mind.

25   See id. (citing Wilson, 501 U.S. at 297).

26   In determining whether a deprivation is sufficiently serious to satisfy the objective

27   component of an Eighth Amendment claim, a court must consider the circumstances, nature, and

28   duration of the deprivation.  Id. at 834 (citing Wilson, 501 U.S. at 298).  With respect to the

subjective component, the requisite state of mind depends on the nature of the claim.  In prison-conditions cases, the necessary state of mind is one of "deliberate indifference."  See, e.g., Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at 834 (inmate safety); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health); Wilson, 501 U.S. at 302-03 (general conditions of confinement).

A prison official cannot be held liable under the Eighth Amendment for failing to guarantee the safety of a prisoner unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety.  See Farmer, 511 U.S. at 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  See id.

Deliberate indifference describes a more blameworthy state of mind than negligence.  See Farmer, 511 U.S. at 835 (citing Estelle, 429 U.S. at 104).  Negligence, and even gross negligence, are not enough to amount to an Eighth Amendment violation.  Farmer, 511 U.S. at 835.  Deliberate indifference is not shown by merely stating that a defendant should have known of a risk, but requires an actual perception of a risk that does not exist merely because a reasonable person should have perceived a risk.  Id. at 836.

### B.    Objective Component

The Court finds plaintiff's claim fails at the first step – the objective component – because plaintiff has not alleged facts or provided evidence to show a "sufficiently serious" deprivation.  Farmer, 511 U.S. at 834.  At most, the undisputed facts show that plaintiff was transported back to jail after a court appearance and that an attack occurred wherein he suffered a single punch to the back of his head.  Swanson intervened immediately to take Valle to the ground and prevent a second punch.  Although the attack only became possible after Swanson and his partner removed Valle's restraints, Swanson has submitted undisputed evidence that federal restraints are always removed from prisoners once they reach the secure sallyport of a destination where the custody of the prisoners is transferred to non-federal law enforcement officials.  (Swanson Decl. ¶ 15.)  This is because federal restraints are different from the restraints used by non-federal law enforcement.  (Id.)  Swanson has also submitted undisputed evidence that this was standard procedure that he

1   had performed more than 100 times prior to the July 6, 2011 incident, and he had never before

2   witnessed a fight between prisoners during a prison transfer.  (Id. ¶ 14.)  Simply transporting a

3   group of inmates from a federal court to a county jail and following procedure cannot, in and of

4   itself, constitute an Eighth Amendment violation.  At most, plaintiff has shown an isolated prison

5   disturbance.  "It is not, however, every injury suffered by one prisoner at the hands of another that

6   translates into constitutional liability for prison officials."  Farmer, 511 U.S. at 834.

7   On this record, plaintiff fails to demonstrate a disputed issue of fact concerning an

8   objectively, sufficiently serious deprivation. Without a showing to satisfy the objective prong of

9   the deliberate indifference analysis, plaintiff cannot withstand summary judgment on his failure-

10  to-protect claim.

11          **C.          Subjective Component**

12          Even assuming that the first, objective component were met, plaintiff has nevertheless

13  failed to show that Swanson knew of and disregarded an excessive risk to his health or safety.  As

14  discussed above, it is standard procedure to remove federal restraints from prisoners in the secure

15  sallyport area of a county jail.  As also discussed above, Swanson had followed this procedure

16  during more than 100 prison transfers prior to the July 6, 2011 incident, and he had never before

17  witnessed a prisoner fight.

18          The parties disagree about whether Swanson should have known there was a risk of attack

19  based on gang affiliation.  Plaintiff contends that Valle was "a known gang member who was in

20  Administrative Segregation." (Compl. at 3.)  While plaintiff does not identify himself as a gang

21  member directly in the complaint, he attaches to the complaint an incident report wherein plaintiff

22  told an interviewing officer that he was a Norteño gang member.  (Compl. Ex. B at 4.)  The same

23  report identifies Valle as a member of the rival Sureño gang.  (See id.)

24          The undisputed evidence shows, however, that a prisoner can be placed in administrative

25  segregation for a variety of reasons, including  a determination that a prisoner is prone to escape;

26  assault staff or other inmates; disrupt the operations of the jail; or likely to need protection from

27  other inmates.  (Swanson Decl. ¶ 4.)  Consequently, Swanson would not have known that Valle

28  was placed in administrative segregation because he was a gang member.  And even assuming for

6

the sake of argument that Swanson knew that Valle was generally violent, it does not logically follow that Swanson knew of a substantial risk that Valle would specifically attack plaintiff.   The undisputed evidence shows that, prior to the attack, plaintiff and Valle had been part of the same group of prisoners being transferred, and Swanson did not see or hear any communication or any signs of conflict between them.  (Swanson Decl. ¶ 11.)  The undisputed evidence also shows that, at the time the restraints were removed, the prisoners were lined up facing west and several law enforcement officers were in the immediate area – creating a highly secure situation.  (Id. ¶ 8.) Swanson has also submitted undisputed evidence that it was common to transfer prisoners who were suspected or known gang members, including rival gang members, but that he had never before witnessed a fight during a prison transfer.   (Id. ¶ 14.)  Consequently, even accepting as true plaintiff's claim that the attack was gang-related, there is no evidence to suggest that the attack could have been anticipated.

Finally, Swanson has produced undisputed evidence that he reacted quickly to subdue Valle and prevent a second punch.  (Swanson Decl. ¶ 9.)  See Bistrian v. Levi, 696 F.3d 352, 371 - 72 (3d Cir. 2012) ("[I]f an inmate alleges that an assailant landed two punches in rapid succession, the fact that guards saw the first punch and reacted quickly enough to prevent a third, but not the second, is not unreasonable.  Such an allegation would not survive a motion to dismiss.")

On the facts adduced, the Court cannot conclude that Swanson acted with negligence, let alone the criminal recklessness required to sustain plaintiff's claim.  Accordingly, the Court finds that plaintiff has failed to raise a triable issue of fact as to whether Swanson acted with deliberate indifference under the subjective prong of Farmer.  511 U.S. at 834.  Defendant Swanson is entitled to judgment as a matter of law.[2]

## CONCLUSION

For the foregoing reasons, defendant Swanson's motion for summary judgment is GRANTED.  The Clerk is directed to terminate U.S. Marshal P. Swanson as a defendant in this

[2] Because the Court grants summary judgment in favor of defendant Swanson on the merits on plaintiff's indifference to safety claim, it need not address Swanson's alternative argument that the claim should be dismissed on the ground that plaintiff failed to exhaust administrative remedies.

action.

The Clerk is further directed to change plaintiff's address to William M. Davis, #15901-111, FCI Allenwood Medium Federal Correctional Institution, P.O. Box 2000, White Deer, PA 17887.

This order terminates Docket No. 17.

**IT IS SO ORDERED.**

Dated:  February 10, 2014



JON S. TIGAR
United States District Judge