UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM M. DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>    Defendants. | Case No. 12-cv-03768-JST (PR)<br><br>**ORDER GRANTING DEFENDANT HAROLD ORR'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 23 |

Plaintiff filed the instant pro se civil rights action under 42 U.S.C. § 1983 alleging violation of his constitutional rights while incarcerated at the Alameda County Jail. Specifically, plaintiff alleges that defendant United States Marshal P. Swanson ("Swanson"), while transporting plaintiff and other inmates to the Alameda County Jail, removed the handcuffs of a known gang member who then hit plaintiff in the back of the head, causing a concussion. Plaintiff also alleges that he did not receive adequate medical care at the jail for his concussion symptoms and for other medical issues. The Court screened the complaint pursuant to 28 U.S.C. § 1915A and found plaintiff had stated a cognizable claim against Swanson for deliberate indifference to his safety in violation of the Eighth Amendment. The Court also found plaintiff had stated a cognizable claim against defendant doctors Orr, McCoy, and Pompey ("medical defendants") for deliberate indifference to his medical needs, also in violation of the Eighth Amendment.

Now before the Court is defendant Harold Orr, M.D.'s ("Dr. Orr") motion for summary judgment. Plaintiff did not file any opposition to the motion, and the deadline by which to do so has passed. For the reasons discussed below, the Court GRANTS the motion. Defendant Swanson's motion for summary judgment has been granted in a separate order.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff makes the following allegations: On July 6, 2011, plaintiff was hit in the back of his head by another inmate. (Compl. at 3-4.) After the assault, plaintiff began experiencing extreme pain in his neck and back. (Id. at 4.) He also began having headaches, insomnia, and tingling in his arm. (Id.) He was seen by Dr. McCoy on or around July 11, 2011. (Id.) She did nothing for plaintiff's condition, except to give him heat compresses. (Id.) Plaintiff requested a second opinion. (Id.) He was seen by Dr. Orr on or around August 5, 2011. (Id.) Dr. Orr informed plaintiff that he had sustained a concussion. (Id.)

Plaintiff continued to suffer the above symptoms and sought medical attention but did not receive proper treatment. (Id.) Instead, he only received ineffective pain medication. (Id.) He requested to see a specialist, but the request was denied. (Id.)

Plaintiff also received inadequate medical attention to issues with blood in his stool, side pain, and difficulty eating. (Id. at 5.) He was referred to a specialist in October 2011, but as of the date of the Complaint had not been seen. (Id.)

Plaintiff's Complaint adds no facts linking medical defendant Dr. Pompey to his allegations of wrongdoing.

**FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise indicated.

**I.      Doctor Orr**

Dr. Orr is employed as a physician to provide services to individuals incarcerated at the Alameda County's Santa Rita Jail and Glenn E. Dyer Detention Facility ("GEDDF"), where plaintiff was incarcerated. (Orr Dec. ¶2.[1]) He also serves as the medical director of these jails. (Id.) As medical director, Dr. Orr's job is to deal with issues concerning the use of non-formulary medications, to review and determine whether outside consultations are to be provided, to monitor hospital emergency visits and admissions, and to be involved in peer review matters. (Orr Dec.

---

[1] Dr. Orr has provided his declaration in support of his motion for summary judgment. Dr. Orr reviewed plaintiff's medical records and has provided a detailed chronology of the care plaintiff received at GEDDF. Plaintiff's medical records are attached to Dr. Orr's declaration as Exhibit B.

1   ¶46.)  He also leads monthly staff meetings concerning business and clinical issues.  (Id.)

2           Dr. Orr does not oversee the day to day provision of health care to inmates who are being
3   followed by other primary care providers.  (Orr Dec. ¶46.)  He does not regularly provide direct
4   care to patients at GEDDF.  (Id.)  He only sees patients at GEDDF if he is filling in for a provider
5   or if he has been asked to consult by another provider.  (Id.)

6           Dr. Orr saw plaintiff only two times during plaintiff's incarceration at GEDDF.  (Orr Dec.
7   ¶46.)  Plaintiff filed the instant action on July 18, 2012.  (Dkt. No. 1).  The only time Dr. Orr saw
8   plaintiff before then was on August 1, 2011, after plaintiff requested a second opinion following
9   his visit with Dr. McCoy.  (Id.)  The other time Dr. Orr saw plaintiff was on February 21, 2013,
10  when Dr. Orr was filling in for the primary care doctor at GEDDF.  (Id.)

11  **II.   Plaintiff's Gastrointestinal Complaints**

12          On October 14, 2011, plaintiff was seen by Dr. Pompey regarding gastrointestinal
13  complaints.  (Orr Dec. ¶12; Compl. Ex. A at 12.)  An exam did not reveal any hemorrhoids or
14  external fissures.  (Id.)  Blood tests and stool specimens were ordered and obtained.  (Id.)  An
15  abdominal x-ray was also ordered and obtained.  (Id.)  The results were normal.  (Id.)

16          On February 21, 2012, Dr. McCoy requested outside gastroenterology ("GI") testing,
17  specifically an endoscopy and a colonoscopy.  (Orr Dec. ¶50, Ex. B at 278.)  Dr. Orr approved the
18  request two days later.  (Id.)  While the GI testing did not occur until October 16, 2012, there was
19  no urgency in having these tests performed.  (Id.)  Dr. McCoy saw plaintiff on May 10, 2012, and
20  addressed the pending GI outpatient tests.  (Orr Dec. ¶25.)  Dr. McCoy noted that plaintiff
21  reported no current GI symptoms, and no anemia had been found on testing.  (Id.)  Her
22  presumptive diagnosis was gastritis.  (Id.)  She specifically noted in the medical record that
23  plaintiff did not present with an emergent or acute medical condition.  (Id.)

24          It is difficult to get an appointment for an endoscopy and colonoscopy, and significant
25  delays are the norm.  (Orr Dec. ¶50.)  During the time it took for plaintiff to be seen at the GI lab,
26  he was monitored and received treatment.  (Id.)  Serial laboratory testing was performed and
27  confirmed that plaintiff's condition did not require urgent diagnostic testing.  (Id.)  His hemoglobin
28  and hematocrit remained stable and well within the normal range.  (Id.)  Also, plaintiff reported

1   noticing less rectal bleeding, and he was being managed on Prilosec, Simethicone, and Metamucil.
2   (Id.)

3         When the endoscopy and colonoscopy were performed on October 16, 2012, the tests
4   confirmed that plaintiff's condition was relatively minor.  (Orr Dec. ¶50.)  Plaintiff had a small
5   internal hemorrhoid, which explained his occasional bleeding.  (Id.)  This is not a serious
6   condition.  (Id.)  The other finding was that plaintiff had a small hiatal hernia.  (Id.)  While this
7   may cause some discomfort, and likely explains plaintiff's reported discomfort after eating, it also
8   is not a serious condition.  (Id.)  It does not require treatment by a specialist, and it is not a
9   condition for which surgery is appropriate.  (Id.)

10        The recommendation from the gastroenterologist following the GI tests was for plaintiff to
11  receive a high fiber diet and a renewal of his Prilosec prescription.  (Orr Dec. ¶35.)  Plaintiff had
12  already been taking Prilosec since it was prescribed by Dr. McCoy on October 26, 2011.  (Orr
13  Dec. ¶¶13, 21, 50.)  Plaintiff also was treated with Simethicone for relief of gas and with
14  Metamucil.  (Orr Dec. ¶17, 18, 21, 50)  While plaintiff complained of pain associated with eating,
15  he did not lose weight.  (Id. ¶50 )  On June 6, 2011, he weighed 215 pounds and on June 5, 2012,
16  he weighed 219 pounds.  (Id.)

17        Between October 14, 2011 and the date plaintiff filed this action, he was seen by medical
18  providers for his GI complaints on ten occasions.  (Orr Dec. ¶¶12-15, 17, 19, 21-23, 25.)  X-rays
19  of his abdomen were performed on December 13, 2011, and were noted to be normal.  (Orr Dec.
20  ¶16.)  Plaintiff was tested for signs of internal bleeding on October 25, 2011, December 24, 2011,
21  and February 2, 2012.  (Orr Dec. ¶¶13, 18, 19.)  Each time the tests results were normal.  (Id.)

22  **III.   Plaintiff's Head and Neck Pain**

23        Plaintiff was struck in the back of the head by another inmate on July 6, 2011.  (Compl. at
24  3-4.)  On July 8, 2011, Dr. McCoy issued an order for aspirin 325 mg 2 pills twice a day and
25  Ibuprofen 600 mg 1 pill twice a day.  (Orr Dec. ¶7.)  Both of these orders extended until July 21,
26  2011.  (Id.)  Dr. McCoy saw plaintiff on July 11, 2011 and entered an order for plaintiff to receive
27  warm compresses for 20 minutes three times a day for five days.  (Orr Dec. ¶8)  Dr. McCoy also
28  ordered Bengay Ultra Strength topical cream to be applied every six hours as needed.  (Id.)  This

1  order extended until August 9, 2011.  (Id.)

2  　　　　On August 1, 2011, Dr. Orr saw plaintiff.  (Orr Dec. ¶9.)  Dr. Orr believes this visit was
3  arranged because plaintiff was dissatisfied with Dr. McCoy's examination and treatment plan.
4  (Id.)  Dr. Orr obtained a detailed history and performed a thorough examination.  (Id.)  Plaintiff
5  stated he had been hit in the back of his head at GEDDF.  (Id.)  He reported losing consciousness
6  for a few seconds, but stated he did not fall when struck.  (Id.)  Plaintiff also stated he had
7  developed some pain in his eyes and neck, some tingling in his right hand, blurred vision in both
8  eyes, headaches in the frontal region and a change in bowel habits.  (Id.)  Plaintiff denied nausea,
9  vomiting or shortness of breath.  (Id.)  He denied having a seizure.  (Id.)  He denied any changes in
10  hearing.  (Id.)

11  　　　　Dr. Orr also inquired of plaintiff's general medical and social history.  (Id.)  Plaintiff
12  reported having no prior history of problems with his head.  (Orr Dec. ¶9.)  He denied any
13  previous loss of consciousness.  (Id.)  His previous surgical history revealed a prior right knee
14  arthroscopy.  (Id.)  He was not taking medication for any chronic condition.  (Id.)  His childhood
15  medical history was unremarkable.  (Id.)

16  　　　　After receiving plaintiff's history, Dr. Orr performed an examination of all of plaintiff's
17  systems.  (Orr Dec. ¶9.)  Dr. Orr found all of plaintiff's systems to be within normal limits.  (Id.)
18  This included an evaluation of his complaints of neck pain, headaches, tingling in the hand and
19  blurred vision.  (Id.)  Dr. Orr did not find evidence of any neurological damage to the head or
20  neck.  (Id.)  He specifically wrote in his progress notes that his examination of plaintiff's
21  neurological systems was "non-focal," which means the examination did not reveal any
22  neurological problem associated with him being struck in the head.  (Id.)

23  　　　　Dr. Orr's assessment was that plaintiff had "post-concussion syndrome."  (Orr Dec. ¶9.)
24  This was based solely on plaintiff's reported history of being struck and his report of continuing
25  headaches.  (Id.)  Dr. Orr's plan was that plaintiff would receive "supportive" care.  (Id.)  This
26  means he could receive over the counter type analgesics for any musculoskeletal pain and that the
27  medical staff should be on the alert for any changes that might indicate a developing neurologic
28  problem.  (Id.)  Dr. Orr's examination did not reveal any condition that would require plaintiff to

United States District Court
Northern District of California

5

1    receive strong pain medication.  (Id.)  He advised that strong medications should be avoided

2    because they can mask the symptoms of a developing neurologic condition.  (Id.)

3           There is no specific treatment that can be provided for a concussion, and patients

4    typically recover over time.  (Orr Dec. ¶9.)  The only time intervention is required is when a

5    patient has serious bleeding in the brain.  (Id.)  In the most serious cases, surgery may be required.

6    (Id.)  Most cases of bleeding resolve without surgical intervention.  (Id.)  Plaintiff exhibited no

7    signs or symptoms of bleeding in the brain or of any serious neurologic injury from the blow to his

8    head.  (Id.)

9           Dr. Orr's August 1, 2011 assessment of plaintiff was that if he in fact had post-concussion

10   syndrome, it was not a serious condition.  (Orr Dec. ¶48.)  Assuming no active bleeding is

11   occurring in the head, there is no treatment that can be prescribed for this condition.  (Id.)  The

12   appropriate action is to evaluate a patient's present condition and rule out any acute process, which

13   Dr. Orr did, and then to follow the patient for any subsequent signs of an acute process.  (Id.)

14          Although plaintiff complained at times of a frontal headache that he associated with being

15   struck, there is no treatment that can be provided for this type of complaint, except for over the

16   counter analgesics, such as aspirin, Tylenol or Motrin.  (Orr Dec. ¶48.)  Also, plaintiff's

17   complaints of headaches following the incident became sporadic and remote.  (Id.)  He

18   complained of headaches when Dr. Orr saw him on August 1, 2011, and then again on September

19   6, 2011.  (Id.)  The next complaint was on January 31, 2012.  (Id.)   After January, the medical

20   record shows he continued to have sporadic complaints of headaches.  (Id.)  This history does not

21   support any connection between these complaints of headaches and the initial blow to plaintiff's

22   head.  (Id.)  If plaintiff had continuing headaches from the initial injury, they would have escalated

23   in the months following the injury.  (Id.)  Plaintiff was evaluated for his complaint of blurred

24   vision by an optometrist, who found he had a slight decrease in visual acuity that was not related

25   to an injury.  (Orr Dec. ¶29.)  The decrease in visual acuity was so slight that the optometrist did

26   not prescribe glasses and recommended that plaintiff be seen in two years.  (Id.)  A review of the

27   entire record shows no evidence of any progressive neurologic condition that could have been

28   related to the blow plaintiff sustained in July of 2011.  (Orr Dec. ¶48.)

6

1  Dr. Orr did not see plaintiff for any musculoskeletal complaints until after plaintiff's
2  Complaint was filed. (Orr Dec. ¶43.) Dr. Orr saw plaintiff on February 21, 2013 concerning
3  plaintiff's complaints of back pain. (Id.) At this visit, plaintiff denied any symptom that would
4  indicate a neurologic condition. (Id.) He denied radiation of pain to his legs, weakness, numbness
5  or tingling. (Id.) Plaintiff reported that exercising and stretching had not provided him any relief
6  and that walking caused the pain to increase. (Id.) On examination, Dr. Orr noted some
7  tenderness in plaintiff's lower thoracic spine, but no costovertebral angle tenderness. (Id.) Dr.
8  Orr's assessment was that plaintiff was experiencing lower thoracic back pain of musculoskeletal
9  origin. (Id.) He ordered x-rays. (Id.) X-rays of plaintiff's chest, thoracic and lumbar spine were
10 performed on February 26, 2013. (Orr Dec. ¶44.) These x-rays showed no spinal disease, injury
11 or abnormality. (Id.) They all were normal. (Id.)

12 Plaintiff's complaints of back pain often did not relate to the neck. (Orr Dec. ¶47.) For
13 example, plaintiff complained of lower back pain, which would not have been caused by a blow
14 to his head. (Id.) Nonetheless, he was evaluated for these complaints and was provided treatment.
15 (Id.) When plaintiff was seen for complaints concerning his head, back or neck, he was not noted
16 to exhibit signs of any serious condition. (Id.) In fact, the medical providers noted just the
17 opposite – that plaintiff exhibited no visible signs of pain or discomfort. (Id.) On occasion, the
18 medical record reflected his complaints of pain were out of proportion to his clinical presentation.
19 (Id.) For example, it was noted that he moved easily, with a normal gait, and seated himself
20 without difficulty. (Id.) Nonetheless, he was treated with the topical treatments that he credited as
21 providing relief. (Id.) He also was prescribed oral analgesics. (Orr Dec. ¶¶ 23, 47.) Plaintiff also
22 was educated on the benefits of exercise and stretching. (Id.)

## DISCUSSION

### I.  Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is

1    genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

2    party.  See id.

3      A court shall grant summary judgment "against a party who fails to make a showing

4    sufficient to establish the existence of an element essential to that party's case, and on which that

5    party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an

6    essential element of the nonmoving party's case necessarily renders all other facts immaterial."

7    See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial

8    burden of identifying those portions of the record that demonstrate the absence of a genuine issue

9    of material fact.  Id.  The burden then shifts to the nonmoving party to "go beyond the pleadings

10   and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

11   file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See id. at 324 (citing

12   Fed. R. Civ. P. 56(e) (amended 2010)).

13     For purposes of summary judgment, the court must view the evidence in the light most

14   favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

15   evidence produced by the nonmoving party, the court must assume the truth of the evidence

16   submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir.

17   1999).  The court's function on a summary judgment motion is not to make credibility

18   determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W.

19   Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

20     A verified complaint may be used as an opposing affidavit under Rule 56, provided it is

21   based on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder

22   v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint

23   as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746,

24   plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not

25   based purely on information and belief but rather on personal knowledge).  Here, plaintiff's

26   verified complaint is considered in opposition to the motion for summary judgment.

27   **II.     Analysis**

28     Deliberate indifference to a serious medical need violates the Eighth Amendment's

United States District Court
Northern District of California

1    proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104

2    (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds,

3    WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v.

4    Johnson, 781 F.2d 769, 771 (9th Cir. 1986).  A determination of "deliberate indifference" involves

5    an examination of two elements: the seriousness of the prisoner's medical need and the nature of

6    the defendant's response to that need.  See McGuckin, 974 F.2d at 1059.

7         A "serious" medical need exists if the failure to treat a prisoner's condition could result in

8    further significant injury or the "unnecessary and wanton infliction of pain."  McGuckin, 974 F.2d

9    at 1059 (citing Estelle, 429 U.S. at 104).  The "existence of chronic and substantial pain [is an] . . .

10   indication[] that a prisoner has a 'serious' need for medical treatment."  Id. at 1060.

11        A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

12   risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer

13   v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from

14   which the inference could be drawn that a substantial risk of serious harm exists," but he "must

15   also draw the inference."  Id.  If a prison official should have been aware of the risk but was not,

16   then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v.

17   County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

18        A showing of nothing more than a difference of medical opinion as to the need to pursue

19   one course of treatment over another is insufficient, as a matter of law, to establish deliberate

20   indifference.  See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004); Sanchez v. Vild,

21   891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).  In

22   order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff

23   must show that the course of treatment the doctor chose was medically unacceptable under the

24   circumstances and that he chose this course in conscious disregard of an excessive risk to

25   plaintiff's health.  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.

26   1996) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

27        Here, even assuming plaintiff had a serious medical need, plaintiff has not come forward

28   with any evidence to show Dr. Orr acted with deliberate indifference to plaintiff's medical

1   condition.  Dr. Orr's involvement with plaintiff's care prior to the filing of plaintiff's complaint was
2   limited to one visit on August 1, 2011.  Dr. Orr's evaluation of plaintiff on August 1, 2011, was
3   very thorough and well-documented.  Dr. Orr found that plaintiff had no serious neurological
4   consequences from the reported blow to his head and concluded plaintiff needed only over the
5   counter analgesics and monitoring.  Dr. Orr's only other pre-filing action was to approve
6   Dr. McCoy's request for plaintiff to have outside GI testing.  He approved Dr. McCoy's request
7   within two days of its having been made.  The procedures identified relatively minor conditions,
8   and the performing physician recommended treatment that plaintiff had been receiving for almost
9   a year at the time the procedure was performed.

10   Indeed, a review of plaintiff's medical record makes clear that no medical provider acted
11   with deliberate indifference to plaintiff's medical condition.  The evidence shows the medical
12   defendants regularly monitored and assessed plaintiff's condition and recommended treatment
13   according to his clinical presentation.  As discussed above, the vast majority of plaintiff's lab tests
14   and physical examinations showed plaintiff's vital signs and neurological function to be normal
15   and showed no condition requiring treatment.  During the approximately one year between the
16   time plaintiff was struck in the head and the filing of this action, plaintiff received at least ten
17   healthcare visits and four lab tests, including an abdominal x-ray.  After plaintiff filed his
18   complaint, he received several more medical visits, as well as endoscopy and colonoscopy
19   procedures and x-rays of his chest and spine.  Plaintiff was also regularly provided with pain
20   medication, medication for digestive issues, and topical cream and compresses for musculoskeletal
21   pain.

22   In sum, the record shows that plaintiff's complaints were not ignored.  Plaintiff received
23   appropriate treatment for his GI complaints, both before and after they were diagnosed.  Similarly,
24   the treatment plaintiff received for his musculoskeletal pain was appropriate in light of his clinical
25   presentation.  Plaintiff has submitted no evidence of any adverse physical consequences from the
26   care he received or from any purported delay in care.

27   Defendants have submitted a declaration from Dr. Orr stating his opinion that the medical
28   defendants' actions were medically appropriate and met or exceeded the applicable standard of

care with respect to the medical care they provided to plaintiff. (Orr Dec. ¶51.) Plaintiff has failed to come forward with specific facts to support a finding to the contrary, let alone a finding of deliberate indifference to his medical needs.

Considering the evidence in the light most favorable to plaintiff, the Court finds that plaintiff fails to raise a triable issue of material fact as to whether defendant Dr. Orr was deliberately indifferent to plaintiff's serious medical needs. Accordingly, summary judgment is granted as to Dr. Orr.

### III.   Unserved Defendants

Medical defendants McCoy and Pompey have not been served in this action and therefore have not participated in the motions for summary judgment filed by the other defendants. Two attempts to serve Drs. McCoy and Pompey have been unsuccessful, and plaintiff has been unable to provide a current address for said defendants. They are similarly situated to medical defendant Dr. Orr insofar as they, like Dr. Orr, are alleged to have been responsible for failing to provide plaintiff adequate medical care. As discussed above, there is no evidence that any medical provider purposefully or deliberately refused to evaluate or treat or unreasonably evaluated or treated plaintiff. Accordingly, summary judgment will be granted in favor of defendants McCoy and Pompey. See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 803 (9th Cir. 1995) (affirming district court's granting summary judgment in favor of non-appearing defendant, where plaintiff, in response to motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against non-appearing defendant).

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Medical defendant Dr. Orr's motion for summary judgment (Dkt. No. 23) is hereby GRANTED.

2. Summary judgment is also GRANTED in favor of medical defendants McCoy and Pompey.

3. Because all other defendants have been dismissed, there is nothing remaining to

1  adjudicate in this action.  The action is therefore DISMISSED.

2         4.       The Clerk shall terminate all pending motions, enter judgment for defendants, and
3  close the file.

4  **IT IS SO ORDERED.**

5  Dated: March 23, 2014



                                          JON S. TIGAR
                                    United States District Judge